SIGMOR 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00194-CV







Sigmor Corporation, Appellant



v.



State of Texas, Appellee







FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 1711, HONORABLE J. D. PHILLIPS, JUDGE PRESIDING








 This is a condemnation action in which the State of Texas recovered title to a small
part of a tract of land owned by appellant Sigmor Corporation ("Sigmor"). The special
commissioners awarded Sigmor $236,360 in severance damages, and the State paid this amount
to the court's registry. The trial court found, however, that Sigmor was only entitled to $40,000
as adequate compensation for both the taking of the strip of Sigmor's land and the resulting
damages to the remainder. Sigmor appeals in three points of error. We will affirm the judgment
of the trial court.



BACKGROUND


 Sigmor, a subsidiary of Diamond Shamrock Marketing and Refining Company,
owned a little over a half-acre of land located at the southwest corner of Highway 183 (Research
Boulevard) and Fairfield in Austin. A Diamond Shamrock service station, complete with a
convenience store, occupies the property. The State sought to acquire a 3.68 foot wide strip of
the land where it touches Highway 183 as part of an ongoing project to convert Highway 183 to
a controlled-access highway. The State is constructing elevated main lanes and widening the
existing roadway.

 In order to acquire this narrow strip across the front of Sigmor's tract, the State
initiated a statutory-condemnation proceeding under Chapter 21 of the Texas Property Code. 
After a hearing on September 28, 1989, the special commissioners assessed damages of $236,360
to be paid by the State for this condemnation in accordance with section 21.042 of the Code. 
After trial in county court, the jury returned a verdict awarding Sigmor $40,000 as adequate
compensation for both the taking of the strip of Sigmor's land and the resulting damages to the
remainder. Thus, the trial court held that the State was entitled to $196,360, which was the net
difference of the $236,360 already paid by the State into the registry of the court and withdrawn
by Sigmor and the $40,000 verdict amount.



DISCUSSION


 In its first point of error, Sigmor asserts that the trial court erred in permitting
evidence of community benefits to offset non-community damages to its land. Specifically,
Sigmor claims that the court improperly allowed the State, on cross-examination, to elicit
testimony from Larry Kokel, Sigmor's appraisal witness, concerning gasoline sales volumes of
the Diamond Shamrock as they were at the time of trial after construction had begun. Sigmor
contends that the sales volumes were unrealistically high at the time of trial because all traffic on
Highway 183 was diverted to pass in front of Sigmor's property due to construction detours on
the frontage road. Sigmor argues that the introduction of unrealistically high sales volumes was
a temporary community benefit and served to discredit Kokel's testimony. (1) Sigmor notes that it
filed a pretrial motion in limine in order to prevent the introduction of this evidence and claims
to have properly objected when the State first asked about the gasoline sales volume during
construction.

 The State argues that this case is factually similar to Schmidt v. State, 867 S.W.2d
769 (Tex. 1993). According to the State, Sigmor is really complaining about the eventual
diversion of traffic to the elevated lanes above its property, which is a non-compensable element
of damage under Schmidt. Further, the State asserts that Sigmor waived its right to complain on
appeal about the introduction of gasoline sales volumes as they were at the time of trial because
it failed to make specific and contemporaneous objections to such evidence. We agree.

 In general, the grant or denial of a motion in limine does not preserve error. 
Johnson v. Garza, 884 S.W.2d 831, 835 (Tex. App.--Austin 1994, writ denied). To preserve the
right to complain on appeal about the admission of evidence at trial, a party must have objected
at the time evidence was offered, the objection must have been specific enough to enable the trial
court to understand the precise nature of the error alleged, and the party must have obtained a
ruling on its objection. Tex. R. App. P. 52. The erroneous admission of testimony is generally
deemed harmless if the objecting party subsequently permits the same or similar evidence to be
introduced without objection. Richardson v. Green, 677 S.W.2d 497, 501 (Tex. 1984). Thus,
even though an objection to evidence is properly made, prior or subsequent presentation of
essentially the same evidence without objection waives the error. Trailways, Inc. v. Clark, 794
S.W.2d 479, 488 (Tex. App.--Corpus Christi 1990, writ denied). 

 During its cross-examination of Kokel, the State asked about the damage to the
remainder of Sigmor's property that was caused by the condemnation.



Q: And you have determined that because of these on-site circulation problems,
it will not be a high-volume gas station any more, have you not?


A: That's correct, after the project is in place. That's correct.


Q: And are you aware of what the gas sales are that are being generated today
after the condemnation?


[Appellant's counsel]:  Your Honor, I object. I think there's something we need
to -- may we approach the bench, please?


The Court:  Yes, come up. (Conference at the bench between Court and counsel
out of the hearing of the jury panel and the court reporter.)


Q: What volume of gas sales does this service station generate today, after the
condemnation, with all the on-site circulation problems that you've mentioned?


A:  It's conducting about the same.



The record does not show what actually took place at the bench conference. We do know that
Sigmor's objection was not specific and that Sigmor's counsel failed to get the court to make a
ruling on the record. Thus, Sigmor did not preserve its error for appeal. See Tex. R. App. P.
52. Further, even if Sigmor had successfully preserved its error, it waived this error by allowing
the subsequent presentation of essentially the same evidence without further objection. See
Trailways, 794 S.W.2d at 488. The State was allowed, without objection, to ask similar questions
concerning the gasoline sales volume of the station at the time of trial at least five more times
during the same cross examination. Accordingly, we overrule Sigmor's first point of error.

 In its second point of error, Sigmor asserts that the trial court erred in refusing to
allow Kokel to testify concerning gasoline sales volumes of service stations similarly situated to
Diamond Shamrock as they were before and after the opening of the main, elevated traffic lanes. 
Sigmor claims to have offered this evidence to rebut what it believed to be improperly admitted
evidence as discussed in point of error one and to show the jury that gasoline sales do in fact
decrease after the opening of the main elevated lanes.

 In this case, the State filed a motion in limine which targeted:



17. Any comment or evidence attempting to show damage to the remaining
property due to a decrease or increase in the number of vehicles that pass by
said property due to the construction of the structure in question because no
landowner has a vested interest in the amount of traffic passing in front of
his/her property.



Sigmor asserts that, in complying with the State's motion in limine, it requested a bench
conference at which it informed the court of its intent to offer evidence of comparable gasoline
service stations to show gasoline sales volumes do in fact decrease after the main, elevated lanes
are opened. Sigmor claims that the court refused to allow the testimony, but did agree to allow
Sigmor to make a Bill of Exception. However, like the one discussed in Sigmor's first point of
error, this bench conference took place outside the presence of the jury and the court reporter, and
thus the record does not show what actually transpired. 

 During the making of Sigmor's Bill of Exception, Kokel testified about these
comparable service stations, and the following discussion took place:



(Sigmor's Counsel):  Your Honor, we'd offer that testimony.


The Court:  Your objection is?


(State's Counsel):  May I ask a couple of questions?


(At this time, State's counsel asked two questions of Kokel and received
responses).


(State's Counsel):  Your Honor, I would object to his testimony, because it shows
that he is considering elements that are noncompensable under Schmidt, i.e.,
diversion of traffic and change in traffic volumes, as a result of the freeway
project.


The Court:  I will sustain the objection. (Explanation omitted).


(Sigmor's Counsel):  Your Honor, may I just make one closing comment--


The Court:  Yes, sir.


(Sigmor's Counsel):  --for purposes of the of the (sic) record. Our position basically
is not to disagree with the Supreme Court, although we certainly would, but
the--within the law, our objection is, and our concern is, our position is this, that
the jury has had the benefit or the opportunity to consider community benefits, but
not community damage and that's a contrary view.


 And if they were not--if we were not going to be able to show evidence to
controvert that, then it should not have been admitted to show the volumes in an
after state because they are enjoying the diversion.


 But anyway, that's our position for clarification.


The Court:  I understood your position.



 When evidence is excluded by a trial court, a party must do certain things in order
to preserve the error for appeal. A party must:



(1) attempt during the evidentiary portion of the trial to introduce the evidence; (2)
if an objection is lodged, specify the purpose for which it is offered and give the
trial judge reasons why the evidence is admissible; (3) obtain a ruling from the
court; and (4) if the judge rules the evidence inadmissible, make a record, through
a bill of exceptions, of the precise evidence the party desires admitted.



Estate of Veale v. Teledyne Indus., 899 S.W.2d 239, 243 (Tex. App.--Houston [1st Dist.] 1995,
writ denied)(citations omitted). In other words, appellant must tender the evidence developed in
the bill of exception and suffer an adverse ruling in order to be entitled to complain on appeal that
the trial court erroneously excluded evidence. Waldon v. City of Longview, 855 S.W.2d 875, 880
(Tex. App.--Tyler 1993, no writ); Tempo Tamers, Inc. v. Crow-Houston Four, Ltd., 715 S.W.2d
658, 662-63 (Tex. App.--Dallas 1986, writ ref'd n.r.e.).

 Sigmor did not successfully preserve error. Because the court reporter was not
present at the bench conference, the record does not reflect whether Sigmor attempted to introduce
the evidence in question, objected or obtained a ruling. Further, in its Bill of Exception, Sigmor
did not state its objection when directly asked by the court and only later attempted to announce
its objection/concern/position. Then, upon announcing this objection, Sigmor failed to get a
ruling on the record. In the Bill of Exception, the State objected to Kokel's testimony, and the
trial court sustained its objection on the record. This, however, does not preserve Sigmor's error. 
Because Sigmor is not now entitled to complain that the trial court erroneously excluded evidence,
point of error two is overruled.

 In its third point of error, Sigmor contends that the cumulative effect of the trial
court's errors as asserted in points of error one and two was reversible error. Because Sigmor
waived any error that the trial court allegedly committed in admitting or excluding evidence, there
is no reversible error in this case. Point of error three is overruled.



CONCLUSION


 We affirm the judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed

Filed: February 28, 1996

Do Not Publish 

1.   On direct examination, Kokel had testified that on-site circulation problems caused
by the taking of the strip of Sigmor's land would lower gas sales volumes thus causing the
station to become a second generation, lower level operation.


(Sigmor's Counsel):  --for purposes of the of the (sic) record. Our position basically
is not to disagree with the Supreme Court, although we certainly would, but
the--within the law, our objection is, and our concern is, our position is this, that
the jury has had the benefit or the opportunity to consider community benefits, but
not community damage and that's a contrary view.


 And if they were not--if we were not going to be able to show evidence to
controvert that, then it should not have been admitted to show the volumes in an
after state because they are enjoying the diversion.


 But anyway, that's our position for clarification.


The Court:  I understood your position.



 When evidence is excluded by a trial court, a party must do certain things in order
to preserve the error for appeal. A party must:



(1) attempt during the evidentiary portion of the trial to introduce the evidence; (2)
if an objection is lodged, specify the purpose for which it is offered and give the
trial judge reasons why the evidence is admissible; (3) obtain a ruling from the
court; and (4) if the judge rules the evidence inadmissible, make a record, through
a bill of exceptions, of the precise evidence the party desires admitted.



Estate of Veale v. Teledyne Indus., 899 S.W.2d 239, 243 (Tex. App.--Houston [1st Dist.] 1995,
writ denied)(citations omitted). In other words, a