

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00361-CV
_____

WESLEY SCHREIBER, AS TRUSTEE FOR THE SCHREIBER
FAMILY TRUST, APPELLANT

V.

SAM COLE AND WENDY COLE, APPELLEES

On Appeal from the County Court at Law No. 2,
McLennan County, Texas
Trial Court No. 2012-0742-CV2; Honorable Brad Cates, Presiding

May 19, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Wesley Schreiber, as Trustee for the Schreiber Family Trust, appeals from a judgment in favor of Appellees, Sam Cole and Wendy Cole, in a landlord-tenant dispute brought by Appellees, as tenants, seeking damages and civil penalties pursuant

to section 92.0081[1] of the Texas Property Code for an allegedly unlawful lockout by Appellant, as landlord. Appellees also sought recovery for personal property that was removed from the leased premises by Appellant. By four issues, Appellant contends (1) the evidence is legally and factually insufficient to support the trial court's finding that Appellees had <u>not</u> abandoned the leased premises,[2] according to the definition of abandonment contained in the lease agreement, (2) the trial court erred in admitting an exhibit which identified and valued Appellees' property that was disposed of by Appellant, (3) the evidence is legally and factually insufficient to support the trial court's award of $3,500 in damages, and (4) the trial court erred in awarding Appellees' attorney's fees. We affirm.

BACKGROUND

Appellees leased the residential property in question pursuant to a lease agreement that provided for a term commencing April 1, 2011, and ending March 31, 2012. According to the terms of the agreement, at the end of the primary term, the lease automatically renewed on a month-to-month basis until either party provided the other written notice of termination, not less than thirty days before the new termination date. The agreement provided for the payment of rent in the sum of $775 per month for each full month of the lease, payable on or before the first day of each month. If the

---

[1] *See* TEX. PROP. CODE ANN. § 92.0081 (West 2014) (pertaining to the removal of property and exclusion of a residential tenant and providing civil penalties for violation of the statute). For purposes of this opinion, hereinafter referred to as "section" or "§."

[2] Because Appellant was asserting the lease agreement had terminated by virtue of Appellees' abandonment of the premises, it was his burden to prove abandonment. Where the challenging party has the burden of proof regarding an adverse finding, the appropriate challenge is either a great weight and preponderance point or a matter of law point. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo 1988, writ denied).

rent was not paid by the 5th day of each month at 11:59 p.m., Appellees were required to pay an initial late charge of $25, plus an additional late charge of $5 per day thereafter until the rent and late charges were paid in full. Additional late charges for any one payment could not exceed more than thirty days.

According to the terms of the lease agreement, a "surrender" of the premises occurred when all occupants had vacated the property, according to the lessor's reasonable judgment, and one of the following occurred: (1) the passing of the date specified in a written notice of termination or (2) the date Appellees returned the keys and access devices provided to them. The lease agreement further provided that Appellees would leave the leased premises in a clean condition free of all trash, debris, and any personal property and that they would not abandon the leased premises.

Furthermore, the lease agreement provided that an "abandonment" occurred when all of the following occurred: (1) Appellees vacated the leased premises, in Appellant's reasonable judgment, (2) Appellees were in breach of the lease agreement by not timely paying rent, (3) Appellant had delivered written notice to Appellees by affixing the notice to the inside of the main entry door, and (4) Appellees failed to respond to the affixed notice by the time required in the notice, which would not be less than 2 days after the date the notice was affixed to the main entry door. If Appellees left any personal property in the leased premises "after surrendering or abandoning the Property," the lease agreement provided, among other remedies, that Appellant could dispose of the property.

The lease agreement further provided for the payment of attorney's fees to "[a]ny person who is a prevailing party in any legal proceeding brought under or related to the transaction described in the lease." The lease agreement required that all notices be "in writing and [were] effective when hand-delivered, sent by mail, or sent by electronic transmission."

During a bench trial in May 2014, Sam testified that he and Wendy had lived in the leased premises for seven years prior to their eviction—the last two of which Appellant was their landlord. Toward the end of February 2012, Sam spoke to Kenneth Cash, Appellant's representative taking care of the leased premises, and told him that they would be moving out. Appellees did not, however, give written notice of their intent to terminate the lease. Cash responded that as long as Appellees were out by the end of March, everything would be okay. Appellees then started moving out. On February 20th, Sam arranged for the water and gas to be turned off. These actions were necessary to bring his accounts current and to get the utilities transferred to Appellees' new house. On February 21st, Appellees began moving into their new residence.

Toward the end of February, Sam fell ill and was hospitalized until March 11th or 12th. As a result, Appellees did not pay their rent for the month of March when it was due. On March 14th, Sam called Cash and was told his personal property had been thrown away. Sam went over to the leased premises but could not enter because the locks had been changed. When they had last been to the house, Appellees had their remaining personal items boxed up and stacked by the front door, ready to pick up. Some of the items of personal property had sentimental value. In addition, they still needed to move several appliances, including a refrigerator, stand-up freezer, and a

4

window air conditioner. Sam admitted that the rent had not been paid for the month of March due to his hospitalization. He also testified he and his wife had not finished moving their personal property out of the house and they had not abandoned the leased premises. In addition, he testified he never received any written notice of termination of the lease agreement.

During trial, Wendy testified from a written statement, Plaintiffs' Exhibit Number 2, which was a list of personal items Appellees claimed were disposed of by Appellant—some of which had sentimental value. Among other items, the personal items listed included appliances, Wendy's mother's emerald ring, baby books, his and her wedding attire, irreplaceable pictures, and mementos. Wendy corroborated her husband's testimony and testified that, because the term of the lease did not expire until the end of March, she was under the impression that she had time to move the remaining items of personal property. She testified that the value of the items listed on Plaintiffs' Exhibit Number 2 was around $5,000.[3] She also testified Sam had given Appellant their new address. On rebuttal, Sam testified that a page attached to the lease agreement also gave Appellant their contact information, including their telephone number.

Cash testified Appellant acquired the leased premises from a previous landlord and that he was familiar with Appellees. He testified he went to the leased premises on March 12th and posted a notice on the residence's front door inside the main entry door stating Appellant considered the property to be abandoned and that they intended to remove Appellees' personal property within five days. He testified he had heard nothing

---

[3] Appellant's attorney objected to Wendy's testimony because "it's not been proved up" and the numbers were "arbitrary numbers [that] have not been testified to by anybody."

5

from Appellees and did not know where they were living. At the expiration of that five day period, he emptied the leased property and disposed of Appellees' personal property. Thereafter, he changed the locks. The following week, Cash received a call from Appellees asking where their personal property was and he told them what he had done. Appellees indicated they had intended to retrieve their remaining personal property and pay rent for the month of March.

Cash recalled having a conversation with Sam concerning the possibility of Appellees moving out, but nothing was in writing. He stated Appellees did not give him an indication whether they intended to return or not after the lease expired. Walt Fair, a real estate agent for thirty years, testified that when all the utilities are turned off, rent has not been paid, a refrigerator still has food inside, and there is the smell of spoiled food in the house, then there is no "question in his mind . . . that property has been abandoned." In addition, Steven Lee Cash, a real estate agent for thirty years, also testified that when utilities are turned off and food in refrigeration units smells due to spoilage, a house should be considered vacated or abandoned. These were all conditions Cash testified were present when he determined the leased premises had been abandoned and affixed the notice on the front door.

In its *Findings of Fact and Conclusions of Law*, the trial court found that, in February 2012, Appellees orally notified Appellant of their intent to not renew the lease but did not provide written notice as required by the lease agreement. On or about March 12, 2012, Appellant posted written notice on the door of the leased premises stating:

6

YOUR DWELLING HAS BEEN ABANDONED.  LANDLORD INTENDS TO REMOVE AND DISPOSE OF ALL PROPERTY WITHIN 5 DAYS OF THIS NOTICE.

When Appellant posted the notice on the door of the leased premises, Appellees' personal property was boxed for transport and placed next to that door.  Appellees' personal property included personal and family photos, specialty clothing, and jewelry items which were, in some cases, "clearly of a nature of special personal value and unlikely to be intentionally discarded" by Appellees.  On or about March 18, 2012, Appellant changed the door locks on the leased premises and removed and disposed of most of Appellees' personal property.  The fair market value of Appellees' personal property retained or destroyed was $3,500 and their reasonable and necessary attorney's fees were $1,500.

In its *Conclusions of Law*, the trial court found Appellees had not abandoned the leased premises and it was not reasonable for Appellant to conclude the leased premises were abandoned as that term is defined by the lease agreement.  He further determined that, at the time Appellant changed the locks, the lockout and removal of Appellees' personal property was wrongful.  The trial court awarded $6,000 in damages as follows:  $3,500 for personal property disposed of by Appellant, $1,500 in attorney's fees, $1,000 as a statutory civil penalty pursuant to section 92.0081(h), and $775 as one month's rent, less an offset of one month's delinquent rent.  The trial court also awarded Appellees $286 in court costs and post-judgment interest at the rate of 5% per annum from the date of judgment.  Neither party sought any clarification of the trial court's *Findings of Fact and Conclusions of Law.*  This appeal followed.

By his first issue, Appellant contends the evidence is legally and factually insufficient to support the trial court's finding that Appellees had *not* abandoned the leased premises, according to the definition of abandonment contained in the lease agreement.[4] Abandonment is a mixed question of law and fact. Because it was Appellant's burden to establish abandonment, this issue essentially asserts that either (1) Appellant has established the contrary, i.e., abandonment of the premises, as a matter of law or (2) the trial court's finding of no abandonment is against the great weight and preponderance of the evidence. We reject both premises.

In a legal sufficiency review, a reviewing court must view the evidence in a light most favorable to the disputed finding, indulging every reasonable inference that supports the finding, while disregarding all evidence and inferences that are contrary to that finding; provided, however, the court may not disregard evidence that allows only one inference. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). Here, Appellees testified they had communicated with Appellant's representative and had agreed to be out of the leased premises by the end of March. Their personal possessions were not merely left in place but had, instead, been placed in boxes which, in turn, had been placed by the door as if in anticipation of being retrieved and removed. Furthermore, construed in the light most favorable to the trial court's ruling, the boxes contained items "clearly of a nature of special personal value and unlikely to be intentionally discarded by the owners." Because the trial court was presented evidence

---

[4] In its *Conclusions of Law*, the trial court found that "[Appellees] had not abandoned the Leased Premises" and "[i]t was not reasonable for [Appellant] to conclude [Appellees] had abandoned the premises, as that term is defined in the Lease."

that the lease agreement did not terminate by its own terms and that Appellees intended to return to retrieve their personal property, we cannot say that abandonment of the leased premises was established as a matter of law.

In reviewing factual sufficiency, the reviewing court must consider, examine, and weigh all of the evidence in the record. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406-07 (Tex. 1998), *cert. denied,* 525 U.S. 1017, 119 S. Ct. 541, 142 L. Ed.2d 450 (1998). In doing so, the court no longer considers the evidence in the light most favorable to the disputed finding; instead, the court considers and weighs all the evidence, and sets aside that finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 407. A reviewing court may not substitute its own judgment for that of the trier of fact, even if it would reach a different conclusion based on the evidence. *Id.*

Here, it is undisputed that (1) Appellees were in breach of the lease agreement by not timely paying rent, (2) Appellant had delivered written notice to Appellees by affixing the notice to the inside of the main entry door, and (3) Appellees failed to respond to the affixed notice by the time required in that notice. Therefore, according to the definition of abandonment contained in the lease agreement, the disputed issue boils down to whether, in Appellant's reasonable judgment, Appellees had vacated the leased premises. Appellant contends he reasonably believed Appellees had vacated the leased premises entitling him to avail himself of the contractual remedy of entering the premises to dispose of any abandoned personal property. As stated above, the trial court found that it was not reasonable for Appellant to conclude Appellees had abandoned the premises, and in light of all the facts set forth above, we cannot say the

9

trial court's conclusion was against the great weight and preponderance of the evidence.  Appellant's first issue is overruled.

## ISSUE TWO

At trial, Appellant objected to the introduction into evidence of Plaintiffs' Exhibit Number 2, a list of items of personal property and their values.  Testimony was presented that the list was a statement of the items missing from the leased property and that it accurately summarized the value of the items that were removed from the premises.  Appellant's attorney objected to the introduction of the list into evidence because "it's not been proved up," "the arbitrary numbers on [the list] have not been testified to by anybody," and her testimony was not consistent with the list.

We review a trial court's decision to admit or exclude testimony under an abuse of discretion standard.  *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000).  The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles; in other words, we must decide whether the act was arbitrary or unreasonable.  *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004).  We must uphold an evidentiary ruling if there is any legitimate basis for it. *State Bar of Texas v. Evans,* 774 S.W.2d 656, 658 n.7 (Tex. 1989).

On appeal, Appellant asserts a number of grounds upon which we should find that the trial court abused its discretion in admitting Plaintiffs' Exhibit Number 2 into evidence, i.e., the exhibit was hearsay, Wendy did not have knowledge of the items on the list or explain how she valued each item, nor did she explain how she knew the boxes remaining on the leased premises contained those particular items.  These are

10

not the objections Appellant's counsel made during the bench trial. Instead, Appellant's counsel objected on the basis that the evidence was inadmissible because "it's not been proved up." Such an objection is a general objection and, as such, is insufficient to preserve error. *Walden v. City of Longview,* 855 S.W.2d 875, 878 (Tex. App.—Tyler 1993, no writ) (objection that party failed to lay proper predicate for introduction of statement into evidence too general to preserve error). Accordingly, we overrule issue two.

ISSUE THREE

Appellant next asserts that there is no evidence or factually insufficient evidence Appellees suffered damages because, in essence, there was no evidentiary basis for admitting the values placed on the items as contained in Plaintiffs' Exhibit Number 2. In support, Appellant asserts Wendy's personal property valuations are arbitrary and unreliable.

Whether the values in Plaintiffs' Exhibit Number 2 are arbitrary and unreliable are essentially evidentiary objections that should have been made at trial if Appellant wanted to preserve error. As stated in our discussion of issue two, Appellant's objection at trial was too general to preserve error. What Appellant attempts to do here is to refine a general objection at trial regarding the admissibility of Plaintiffs' Exhibit Number 2 into a specific basis for appeal. This he cannot do. *See Walden,* 855 S.W.2d at 878. Issue three is overruled.

ISSUE FOUR

Appellant next asserts the trial court erred in awarding attorney's fees to Appellees because they breached the lease agreement by not paying rent and the trial court's judgment is in error. Again, we disagree.

Attorney's fees may be recovered only if specifically provided for by statute or contract, *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011), and the plaintiff proves a compensable injury and secures an enforceable judgment in the form of damages and equitable relief. *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 651-52 (Tex. 2009). Here, both the contract and section 92.0081(h)(2) provide for the recovery of reasonable attorney's fees to the prevailing party, and Appellees have proven a contractual claim for compensatory damages and secured an enforceable judgment for statutory relief. Thus, they have "prevailed." *Id.* Accordingly, Appellees are entitled to recover their attorney's fees and Appellant's fourth issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice